UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

SIDEWINDER FILMS, LLC,

        Plaintiff,

v.

SIDEWINDER FILMS, LLC,

        Defendant.

_____

Civil No. 19-13992 (NLH/AMD)

**OPINION**


**APPEARANCES:**

TYLER BAKER
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 ROCKEFELLER PLAZA
NEW YORK, NY 10112

    *On behalf of Plaintiff*

No appearances were entered on behalf of Defendant


**HILLMAN**, District Judge

    Pending before the Court is Plaintiff Sidewinder Films, LLC's ("Plaintiff") motion for entry of default judgment filed against Defendant Sidewinder Films, LLC ("Defendant"). (ECF 37). For the reasons expressed below, Plaintiff's motion for entry of default judgment will be granted in part and denied in part, and a permanent injunction will be entered.

I.   **Factual and Procedural History**

    Plaintiff is a film production company that has made

multiple award-winning documentary films.  (ECF 1 at ¶ 6).
Plaintiff filed for the trademark "Sidewinder Films" on April
28, 2016 and the mark was thereafter published on September 27,
2016 and issued on February 14, 2017, (id. at ¶¶ 13-15), dates
that are confirmed by a search of U.S. Reg. No. 5,143,460 in the
United States Patent and Trademark Office's Trademark Electronic
Search System.  Plaintiff asserts that it "is the owner of all
rights in and to the 'SIDEWINDER FILMS' trademark in connection
with the production and distribution of Motion Pictures and
television programs."  (Id. at ¶7).

Defendant is a film production company also representing
itself as "Sidewinder Films."  (Id. at ¶10).  Plaintiff alleges
that Defendant was formed on November 16, 2016 — following the
success of Plaintiff's film, "Munich '72 and Beyond" — and has
created confusion in the film industry and marketplace in
general by using the same name as Plaintiff.  (Id. at ¶¶ 10-11).

Plaintiff's counsel sent cease-and-desist letters to
Defendant on October 30, 2018 and November 27, 2018, asserting
Plaintiff's rights in the Sidewinder Films trademark; neither
letter received a response.  (Id. at ¶¶ 17-18).  Counsel for
Defendant emailed Plaintiff's counsel on February 20, 2019
asking whether Defendant's January 3, 2019 letter was sent to
Plaintiff's counsel. (Id. at ¶ 19).  Plaintiff's counsel
responded that it had not yet received any response and asked

whether Defendant's counsel would accept service on behalf of Defendant and its principal, John F. Raisola.  (Id. at ¶ 20). Plaintiff's counsel did not receive a response.  (Id.).

On June 19, 2019, Plaintiff filed the Complaint asserting five counts against Defendant: (1) trademark infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) trademark counterfeiting in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (3) false endorsement / unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) unfair competition in violation of N.J.S.A. §§ 56:4-1 and 56:4-2; and (5) unfair competition in violation of New Jersey common law. (Id. at ¶¶ 25-52).  Plaintiff sought, among other relief, a permanent injunction enjoining Defendant from use of the trademark, an order directing Defendant to recall any and all products at its own expense, and an award of actual, trebled, statutory, and punitive damages along with attorney's fees and costs.  (Id. at p. 14-17).  Service of the summons and Complaint was effectuated on Raisola on July 7, 2019.  (ECF 4).

Defendant's counsel sought an extension of time to file an answer on July 30, 2019, (ECF 6), and Magistrate Judge Ann Marie Donio entered an order granting the request that same day, (ECF 7).  On December 9, 2019, prior to the filing of any answer, the Clerk issued Notice of Call for Dismissal pursuant to Local

Civil Rule 41.1(a).  (ECF 7).  The Court, upon the request of both parties, vacated the Notice of Call for Dismissal on December 17, 2019 and ordered Defendant to file an answer by January 10, 2020.  (ECF 10).  Defendant's Answer was filed on January 8, 2020.  (ECF 11).

Judge Donio issued a scheduling order on February 4, 2020, (ECF 14), and Plaintiff served Defendant with its first set of requests for production on February 7, 2020, (ECF 37-3 at ¶ 8). Defendant's counsel filed a motion to withdraw on February 26, 2020, (ECF 15), attesting that Defendant had been uncooperative in providing counsel necessary documents and had failed to pay outstanding legal fees, (ECF 15-1 at ¶¶ 10-13).  Defendant did not provide a representative for the May 19, 2020 telephonic hearing on the motion to withdraw, (ECF 25), and Judge Donio granted the motion to withdraw on May 20, 2020 and ordered Defendant to obtain new counsel within thirty days, (ECF 24).

Judge Donio additionally entered an order for Defendant to appear at a July 9, 2020 telephonic hearing and show cause why an order striking the Answer should not be entered for failure to appear at the May 19, 2020 hearing or otherwise defend.  (ECF 25).  The order placed Defendant **"on notice that failure to respond . . . may result in the imposition of sanctions, including, without limitation, striking the answer, and may be deemed a contempt of Court."**  (Id. at 2-3(emphasis in

4

original)).

New counsel did not enter an appearance on behalf of Defendant and Defendant failed to appear for the July 9, 2020 hearing.  (ECF 30 at 4).  Judge Donio thereafter entered a Report and Recommendation to strike Defendant's Answer, (id. at 4-5), which the Court adopted on January 22, 2021, (ECF 32 at 6-7).

Plaintiff filed a request for default with the Clerk on April 8, 2021, (ECF 33), and default was entered on the same day.  Following the issuance of another Notice of Call for Dismissal on October 18, 2021, (ECF 35), Plaintiff filed both a response, (ECF 36), and the presently pending motion for entry of default judgment pursuant to Rules 55(b), 37(b)(2), and 16(f) of the Federal Rules Civil Procedure, (ECF 37), on October 27, 2021.  Plaintiff seeks in its motion (1) entry of final judgment by default, (2) a permanent injunction, and (3) attorney's fees. (ECF 37-2 at 2).  Plaintiff's motion expressly does not seek damages.  (Id. at 2 n.1).

## II.  **Discussion**

### A.  **Jurisdiction**

The Court has jurisdiction over this action pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1125.  The Court further has supplemental jurisdiction over Plaintiff's state law claims.  28 U.S.C. § 1367(a).

5

**B.     Standard for Default Judgment Under Rule 55**

Entry of default judgment pursuant to Rule 55 of the
Federal Rules of Civil Procedure is a two-step process.  First,
default must be entered by the clerk when the party against whom
judgment is sought fails to plead or otherwise defend.  Fed. R.
Civ. P. 55(a).  A court may then, pursuant to Rule 55(b)(2),
"enter a default judgment against a properly served defendant
who fails to file a timely responsive pleading."  Chanel, Inc.
v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. Apr. 7, 2008).
The decision whether to enter default judgment lies in the
discretion of the district court, Barrett v. Tri-Coast Pharmacy,
Inc., 518 F. Supp. 3d 810, 820 (D.N.J. Feb. 10, 2021), but the
Third Circuit has "repeatedly stated [its] preference that cases
be disposed of on the merits whenever practicable," Hritz v.
Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984).

A court must determine, prior to entry of default judgment,
whether: (1) the plaintiff has produced sufficient proof of
valid service and jurisdiction, (2) the unchallenged facts
present a legitimate cause of action, and (3) the circumstances
otherwise make default judgment proper.  Chanel, Inc. v. Matos,
133 F. Supp. 3d 678, 683 (D.N.J. Aug. 13, 2015).  As to the
third prong, the appropriateness of default judgment is
determined by considering: (1) the prejudice to the plaintiff if
default is denied, (2) whether the defendant appears to have a

litigable defense, and (3) whether the defendant's delay is due
to culpable conduct.  Id. at 686 (citing Doug Brady, Inc. v.
N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J.
Apr. 7, 2008)); see also Chamberlain v. Giampapa, 210 F.3d 154,
164 (3d Cir. 2000) (enumerating the same three factors).  In
conducting its analysis, a court is to accept as true all well-
pleaded factual allegations contained in the complaint, but not
the movant's legal conclusions or allegations relating to
damages amount.  Gordashevsky, 558 F. Supp. 2d at 535-36.

## C.   Standard for Default Judgment as a Sanction

Default judgment may, alternatively, be entered as a
sanction pursuant to Rule 37 of the Federal Rules of Civil
Procedure.  Fed. R. Civ. P. 37(b)(2)(A)(vi); see also Fed. R.
Civ. P. 16(f)(1) (permitting courts to "issue any just orders,
including those authorized by Rule 37(b)(2)(A)(ii)-(vii)" due to
failure to appear or comply with an order).  A court determines
whether a sanction of default judgment is appropriate by
weighing the six factors articulated by the Third Circuit Court
of Appeals in Poulis v. State Farm Fire & Casualty Co., 747 F.2d
863 (3d Cir. 1984).  See Air Sea Transp., Inc. v. Niki Int'l,
Inc., No. 2:12-6244, 2014 WL 3548628, at *4 (D.N.J. July 17,
2014) (referring to Rule 16(f)); Malik v. Hannah, 661 F. Supp.
2d 485, 492 n.5 (D.N.J. Sept. 24, 2009)(referring to Rule
37(b)(2)(A)).

The factors to be weighed are: (1) the sanctioned party's personal responsibility, (2) the prejudice to the opposing party caused by the failure to meet scheduling orders and provide discovery, (3) the history of dilatoriness, (4) whether the party or counsel's conduct was willful or in bad faith, (5) the effectiveness of sanctions other than dismissal, and (6) the merits of the claim or defense. <u>Poulis</u>, 747 F.2d at 868. The six factors are to be "balanced," <u>see id.</u>, and "it is not necessary that all of the factors point toward a default before that sanction will be upheld," <u>Hoxworth v. Blinder, Robinson & Co., Inc.</u>, 980 F.2d 912, 919(3d Cir. 1992).

## III. **Analysis**

### A. **Entry of Default Judgment Under Rule 55**

At the outset, the Court notes that Plaintiff's memorandum of law in support of the pending motion applies the <u>Poulis</u> factors to the analysis discussing the merits of entry of default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. (ECF 37-2 at 9-19). <u>Poulis</u> analyses are typically conducted "when a district court imposes sanctions that are tantamount to default judgment." <u>See</u> <u>Knoll v. City of Allentown</u>, 707 F.3d 406, 409 (3d Cir. 2013). Motions for entry of default judgment motion under Rule 55, however, are analyzed consistent with the standard described above. <u>See, e.g.</u>, <u>Matos</u>,

8

133 F.3d at 683, 686.

Acknowledging that "[t]he entry of default has serious consequences," United States v. Pinsky, No. 10-2280, 2011 WL 1326031, at *2 (D.N.J. Mar. 31, 2011), the Court relies on the significant – but not unlimited – discretion it has in considering motions for entry of default on the merits, see Hritz, 732 F.2d at 1180 ("[T]he entry of a default judgment is left primarily to the discretion of the district court."). The Court also recognizes that the Poulis factors share common elements with the Rule 55 standard described above and have been cited in Rule 55 analyses within the district. See Opta Sys., LLC v. Daewoo Elecs. Am., 483 F. Supp. 2d 400, 406 (D.N.J. Apr. 4, 2007). It is with those considerations in mind that the Court proceeds to the merits of Plaintiff's motion for entry of default judgment.

Upon consideration of the relevant factors, the Court finds that entry of default judgment is warranted both on the merits and, in the alternative as a sanction. First, as stated, the Court has jurisdiction over this matter pursuant to both the Lanham Act, 15 U.S.C. §§ 1114, 1125, and 28 U.S.C. § 1367, which provides supplemental jurisdiction over Plaintiff's state-law claims. Defendant, as a limited liability company, was required to be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any

other agent authorized by appointment or by law to receive
service of process."  Fed. R. Civ. P. 4(h)(1)(B); Cerrato v.
Seaboard Corp. Servs., LLC, No. 19-9448, 2020 WL 2559535, at *1
(D.N.J. May 20, 2020).  Raisola was personally served the
summons and Complaint on July 7, 2019.  (ECF 4).

     Next, accepting the allegations in the Complaint as true,
see Gordashevsky, 558 F. Supp. 2d at 535-36, Plaintiff has
articulated legitimate causes of action.  To prevail in a
trademark infringement or unfair competition claim under the
Lanham Act, 15 U.S.C. §§ 1114, 1125, a plaintiff must prove that
the mark in question is valid and legally protectable, owned by
plaintiff, and that defendant's use of it is likely to create
confusion.  A&H Sportswear, Inc. v. Victoria's Secret Stores,
Inc., 237 F.3d 198, 210 (3d Cir. 2000).  Plaintiff here has
demonstrated ownership of the mark and that fact and the
validity of the mark are confirmed by a search of the United
States Patent and Trademark Office's Trademark Electronic Search
System.  As the marks in question are identical, the Court is
satisfied that Defendant's use is likely to create confusion.
See Louis Vuitton Malletier, S.A. v. Mosseri, No. 07-2620, 2009
WL 3633882, at *2 (D.N.J. Oct. 28, 2009).  This same analysis is
applicable to Plaintiff's state statutory and common-law claims
because "the elements of unfair competition under N.J.S.A. §
56:4-1 and New Jersey common law are the same as those required

under the Lanham Act." G&W Lab'ys, Inc. v. Laser Pharms., LLC,
No. 3:17-cv-3974, 2018 WL 3031943, at *7 (D.N.J. June 19, 2018).

Finally, the Court finds that entry of default judgment is
proper.  First, Defendant's failure to proceed with
representation as ordered or otherwise defend the action
prejudices Plaintiff as it prevents Plaintiff from proceeding
with this case and obtaining relief.  See TBI Unlimited, LLC v.
Clear Cut Lawn Decisions, LLC, No. 12-3355, 2016 WL 5660426, at
*3 (D.N.J. Sept. 29, 2016).  The Court also finds persuasive the
fact that plaintiffs seeking injunctive relief under the Lanham
Act are "entitled to a rebuttable presumption of irreparable
harm upon a finding of a violation." 15 U.S.C. § 1116(a); Prime
Hookah Inc. v. FCM Online LLC, No. 2:21-cv-13915, 2022 WL
1115361, at *4 (D.N.J. Apr. 14, 2022).

Second, no meritorious defense has been presented that
would caution against entry of default judgment.  "A claim, or
defense, will be deemed meritorious when the allegations of the
pleadings, if established at trial, would support recovery by
plaintiff or would constitute a complete defense." Maersk Line
v. TJM Int'l Ltd. Liab. Co., 427 F. Supp. 3d 528, 536 (D.N.J.
July 3, 2019)(quoting Poulis, 747 F.2d at 869-70)).  The Court
notes that, by virtue of its Answer being struck and its failure
to otherwise defend against Plaintiff's claims, Defendant has
not presented any defense.  This failure weighs in favor of

entry of default judgment.  See Barrett, 518 F. Supp. 3d at 829.
Similarly, with respect to the third and final factor regarding
Defendant's culpability, "if a defendant fails to answer, move,
or otherwise respond to an action, culpability will be
presumed."  Id. at 830.

Because all three factors weigh in favor of Plaintiff, the
Court holds that Plaintiff is entitled to entry of default
judgment on the merits of its claim.

**B. Entry of Default Judgment as a Sanction**

Though the Court has determined that Plaintiff is entitled
to entry of default judgment under Rule 55, it will proceed with
an analysis of default as a sanction for the sake of
completeness and in the alternative.  Entry of default judgment
as a sanction under Rules 16(f) and/or 37(b)(2)(A) of the
Federal Rules Civil Procedure, as stated, requires a balancing
of the Poulis factors, see Air Sea Transp., Inc., 2014 WL
3548628, at *4; Malik, 661 F. Supp. 2d at 492 n.5, which the
Court will consider in turn.

Turning first to the personal responsibility of Defendant,
the Court notes that, while represented, Defendant was "not . .
. cooperative as it relate[d] to . . . requests for
documentation needed to defend."  (ECF 15-1 at ¶ 13).  Defendant
thereafter did not attend or produce a representative for the
hearings on counsel's motion to withdraw or the order to show

12

cause, (ECF 25; ECF 30 at 4), or comply with Judge Donio's order
to obtain new counsel, (ECF 24 at 2).  These failures were made
even though, as referenced in Judge Donio's Report and
Recommendation, Defendant could not proceed without licensed
counsel.  See Beale v. Dep't of Justice, No. 06-2186, 2007 WL
327465, at *3 (D.N.J. Jan. 30, 2007)(dismissing plaintiff
limited liability corporation from an action due to its failure
to appear through an attorney).  The Court thus holds that
Defendant bears personal responsibility for its failure to
retain new counsel or otherwise participate in this matter.  See
Ohntrup v. Gallagher, No. 03-4891, 2007 WL 2462619, at *4
(D.N.J. Aug. 27, 2007) (finding that the third-party defendant
"b[ore] sole responsibility for its failure to retain counsel
and communicate with [the third-party plaintiff] and the
Court").

Second, as to prejudice to Plaintiff, "impeding a party's
ability to prepare effectively a full and complete trial
strategy is sufficiently prejudicial." Ware v. Rodale Press,
Inc., 322 F.3d 218, 222 (3d. Cir. 2003).  A party's refusal to
attend required conferences, participate in discovery, and the
like may be found to prejudice a movant.  See Hoffman v. Palace
Ent., 621 Fed. Appx. 112, 115 (3d Cir. 2015)(citing Adams v.
Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 874
(3d Cir. 1994)).  Here, again, Defendant failed to cooperate

13

with its own counsel while represented, (ECF 15-1 at ¶ 13), and has thereafter failed to participate at all in this action, including failure to attend hearings.  Plaintiff is unable to assess the amount of potential damages due to Defendant's failure to participate in discovery.  (ECF 37-2 at 10).  The Court therefore holds that Plaintiff has been prejudiced by Defendant's failure to abide by orders or provide discovery.

Third, the record evidences a clear history of dilatoriness by Defendant.  "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as . . . consistent tardiness in complying with court orders."  Adams, 29 F.3d at 874.  Defendant failed to attend hearings and continues to fail to comply with Judge Donio's two-year-old order to retain new counsel.  This delay goes beyond mere "tardiness" and represents, in the Court's view, a history of dilatoriness.

Fourth, with respect to Defendant's willful or bad-faith conduct, the Third Circuit has found that "[w]illfulness involves intentional or self-serving behavior."  Id. at 875.  Willfulness or bad faith may be found in a party's failure to respond to a court order and repeated failure to retain new counsel.  See Clarke v. Nicholson, 153 Fed. Appx. 69, 73 (3d Cir. 2005); see also Aetrex Worldwide, Inc. v. Sourcing For You Limited, No. 2:14-cv-02504, 2017 WL 5513683, at *3 (D.N.J. Nov. 17, 2017) (finding "willful" defendant's failure to identify

efforts taken to retain new counsel).  Defendant did not attend hearings as required by Judge Donio and continues to fail to comply with Judge Donio's order to retain new counsel. Defendant's continued behavior, spanning more than two years, is sufficiently willful to weigh in favor of Plaintiff.

Fifth, courts must generally consider alternative remedies such as attorney's fees and preclusion of claims before taking the harsher step of entering default.  Linwood Trading LTD v. Am. Metal Recycling Servs., No. 14-5782, 2017 WL 2825934, at *2 (D.N.J. June 1, 2017).  That does not, however, mean that courts are bound to impose the most lenient sanction available.  See Hoxworth, 980 F.2d at 922.  A party's continued inaction or failure to abide by court orders may render imposition of a lesser sanction in hopes of improved behavior futile.  See Chinn v. Deptford Twp., No. 20-cv-10256, 2022 WL 2384004, at *5 (D.N.J. July 1, 2022).  Relevant to the instant matter is the fact that the Court already entered an order adopting Judge Donio's Report and Recommendation and imposing the lesser sanction of striking Defendant's Answer.  (ECF 32 at 6-7). Defendant's behavior remains unchanged nearly twenty-one months later and the Court finds that an alternative, lesser sanction now would prove no more effective.

Finally, a "defense will be considered meritorious if the allegations of the pleadings, if established at trial, would . .

. constitute a complete defense." Huertas v. U.S. Dep't of Educ., No. 08-3959, 2010 WL 2771767, at *9 (D.N.J. July 12, 2010) (citing Briscoe v. Klaus, 538 F.3d 252, 263 (3d Cir. 2008)).  As stated in the Court's Rule 55 analysis, the effect of Defendant's Answer being stricken is that the Court has no pleading on which to rely.  Consequently, the Court – at best – has no means of knowing the merits of Defendant's defense, a complication not determinative to the Court's analysis as entry of default does not require finding each factor in favor of the movant.  See Hoxworth, 980 F.2d at 919.

Therefore, after weighing the six Poulis factors, the Court finds that they – on balance – weigh in favor of entry of default judgment as a sanction.

## C. Relief

### a. Permanent Injunction

Having concluded that Plaintiff is entitled to entry of default judgment, the Court next considers the requested relief.

Plaintiff first seeks a permanent injunction to prevent further infringement on its mark by Defendant.  The Lanham Act expressly provides for injunctive relief, 15 U.S.C. 1116(a), and a permanent injunction "is ordinarily granted upon a finding of trademark infringement," Matos, 133 F. Supp. 3d at 689 (quoting Lermer Germany GmbH v. Lermer Corp., 94 F.3d 1575, 1577 (Fed. Cir. 1996)).  To warrant a permanent injunction, a plaintiff

16

must show that: (1) it has suffered an irreparable injury, (2) the remedies available at law inadequately compensate for that injury, (3) the balance of hardships between the parties favors equitable relief, and (4) permanent injunction would not be contrary to the public interest.  Id. (citing eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)).  "[A] plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage."  MB Imports, Inc. v. T&M Imports, LLC, No. 10-3445, 2016 WL 8674609, at *5 (D.N.J. Dec. 23, 2016) (quoting Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F. Supp. 2d 384, 480 (D.N.J. June 5, 2009)).  The Court finds that Plaintiff has satisfied this four-part test and will grant permanent injunctive relief.

First, the Court recognizes that a plaintiff seeking injunctive relief is "entitled to a rebuttable presumption of irreparable harm upon a finding of a violation" under the Trademark Modernization Act of 2020.  See 15 U.S.C. 1116(a); Lontex Corp. v. Nike, Inc., No. 18-5623, 2022 WL 622321, at *6 (E.D. Pa. Mar. 3, 2022).  Further, "once the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury."  Pappan Enters., Inc. v. Hardee's Food Sys., 143 F.3d 800, 805 (3d Cir. 1998); see also J&J Snack Foods Corp. v. Nestle USA, Inc., 149 F. Supp. 2d 136, 157 (D.N.J. June 27,

2001) ("[W]here likelihood of confusion is proved, irreparable
injury is presumed."). When, as here, Defendant has infringed
on Plaintiff's exact mark, "a clear case of confusion" is
created and the irreparable-injury prong of the analysis is
satisfied. See Matos, 133 F. Supp. 3d at 689.

Second, the Court holds that remedies available at law,
such as monetary damages, would provide insufficient relief for
Plaintiff. A permanent injunction will serve to "protect
[Plaintiff] against the threat of future infringement, a threat
that cannot be averted by compensatory relief alone." See E.A.
Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d
560, 577 (D.N.J. May 13, 2014).

The Court, thirdly, finds that the hardships faced by
Plaintiff as compared to Defendant favors injunctive relief.
Balancing parties' respective hardships is intended "to ensure
that the issuance of an injunction would not harm the infringer
more than a denial would harm the mark's owner." Opticians
Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 197 (3d
Cir. 1990). Here, denial of an injunction places Plaintiff at
risk of continued reputational harm, see Matos, 133 F. Supp. 3d
at 689, while any "injury [Defendant] might suffer if an
injunction were imposed may be discounted by the fact that
[Defendant] brought that injury upon itself," Novartis Consumer
Health, Inc. v. Johnson & Johnson-Merck Consumer Pharma. Co.,

290 F.3d 578, 596 (3d Cir. 2002).

Finally, "[p]ublic interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." Opticians Ass'n of Am., 920 F.2d at 197.  Here, the Court holds that the public interest is best served by enjoining infringement and preventing consumer confusion, see E.A. Sween Co., Inc., 19 F. Supp. 3d at 577 (citing Kos Pharms, Inc. v. Andrx Corp., 369 F.3d 700, 730 (3d Cir. 2004)), an inevitable consequence when the marks are identical, see Matos, 133 F. Supp. 3d at 689.

### b. Attorney's Fees

The Lanham Act additionally provides for the award of reasonable attorney's fees "in exceptional cases."  15 U.S.C. 1117(a).  A case may be deemed "exceptional" when "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'"  Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 315 (3d Cir. 2014)(quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014)). Unreasonableness in litigation may be found when, as is the case here, a party fails to litigate.  See Cosmetic Warriors Ltd. v. Nailush LLC, No. 17-1475, 2017 WL 5157390, at *7 (D.N.J. Nov. 6, 2017).

Before attorney's fees can be awarded, however, a determination must be made as to whether they are reasonable. This is done by conducting a lodestar analysis, which multiplies a reasonable hourly rate by a reasonable number of hours worked. Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). District courts have substantial discretion in determining reasonable rates and hours, Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001), though "in most cases, the relevant rate is the prevailing rate in the forum of the litigation," Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 705 (3d Cir. 2005) (setting exceptions for when special expertise is necessary or when local counsel is unwilling to provide representation).

Parties seeking attorney's fees "must include fairly definite information as to hours devoted to various general activities, e.g., partial discovery, settlement negotiations, and the hours spent by various classes of attorneys." Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir. 2001). This standard mirrors our Local Civil Rule 54.2, which requires that motions for fees be accompanied by documentation detailing the nature of services provided, dates of service and time spent, normal billing rates, and similar information. L. Civ. R. 54.2(a). Failure to sufficiently document hours may lead to a reduced award. United Auto. Workers Local 259 Soc. Sec. Dep't

20

v. Metro Auto Ctr., 501 F.3d 283, 291 (3d Cir. 2007) (citing Hensley, 461 U.S. at 433).

Here, Plaintiff seeks $29,437.50 in attorney's fees of a single senior associate attorney and supports that sum by providing a declaration from the attorney, invoice summaries and fee-rate sheets, the attorney's biography, and charging-fee data from a survey of the American Intellectual Property Law Association (AIPLA). (ECF 37-3; ECF 37-4; ECF 37-5; ECF 37-6).

A review of the provided fee-rate sheets shows that the attorney worked 4.5 hours at a rate of $690.00 per hour, totaling $3,105.00, 16.2 hours at a rate of $775.00 per hour, totaling $12,555.00, and 16.7 hours at a rate of $825.00 per hour, totaling $13,777.50. While similar work spanned these hours – drafting and revising documents, conferring with various individuals, etc. – the applicable rates vary based on the attorney's individual billing rates at the time the work was performed. (ECF 37-3 ¶ 29). Though hours need only be explained "to the extent necessary for the district court 'to determine if the hours claimed are unreasonable for the work performed,'" Washington v. Phila. Cnty. Ct. of Common Pleas, 89 F.3d 1031, 1037 (3d Cir. 1996)(quoting Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir. 1990)), the Court notes that general tasks such as "research" and "review" of various documents similar to the descriptions in the provided fee-rate

sheets have led courts within the Third Circuit to disregard time entries, see Souryavong v. Lackawanna Cnty., 159 F. Supp. 3d 514, 534 (M.D. Pa. Feb. 1, 2016) (collecting cases).

More significantly, Plaintiff provided AIPLA survey data, (ECF 37-6), that provides the "hourly billing rates for . . . nationwide firms with more than 150 attorneys," (ECF 37-2 at 24). Plaintiff is correct that AIPLA reports have previously been used within the district to determine the reasonableness of hourly rates, (id. (citing Sundesa, LLC v. Tejarah Int'l Inc., No. 20-cv-2609, 2020 WL 6781579, at *2 (D.N.J. Nov. 17, 2020)), but the Court cannot find that the information provided by Plaintiff here demonstrates that the listed rates represent "the prevailing community market rate where the suit is litigated," Diaz v. Saucon Valley Manor Inc., 579 Fed. Appx. 104, 110 (3d Cir. 2014). Here that rate is that prevailing in the Philadelphia/New Jersey legal market, not New York City. Plaintiff provides no explanation as to why the forum rate rule should not apply. See Interfaith Cmty. Org., 426 F.3d at 705.

The Court therefore cannot determine the reasonableness of the hours worked or rates charged with the information provided. This determination does not foreclose Plaintiff from submitting a motion for attorney's fees with additional support, which the Court will assess on the merits.

**IV. Conclusion**

For the reasons stated above, Plaintiff's motion for entry of default judgment will be granted in part and denied in part and a permanent injunction will be entered.  However, the Court will grant Plaintiff's counsel thirty (30) days leave to supplement its application for attorney's fees.

An Order consistent with this Opinion will be entered.


Date: <u>October 11, 2022</u>          <u>s/ Noel L. Hillman</u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.